UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| In Re:<br><br>CHRISTOPHER WELLS HARPER,<br>JANICE DANIELLE HARPER,<br><br>Debtors. | Case No.<br><br>10-07510-8-JRL<br><br>Chapter 7 |
| James B. Angell, Chapter 7 Trustee for<br>Christopher Wells Harper and Janice Danielle<br>Harper,<br><br>Plaintiff,<br><br>v<br><br>Christopher Wells Harper and Janice Danielle<br>Harper,<br><br>Defendants. | Adversary Proceeding<br>No.: 11-0015-8-JRL |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

NOW COMES James B. Angell, Chapter 7 Trustee for Christopher Wells Harper and Janice Danielle Harper ("Trustee" or "Plaintiff"), by and through undersigned counsel, and submits this Memorandum of Law in Support of Trustee's Motion for Summary Judgment on his claims that the Defendants' discharges should be denied pursuant to 11 USC §727(a)(4)(A).

## SUMMARY OF UNDISPUTED FACTS

Christopher Wells Harper and Janice Danielle Harper (the "Debtors" or "Defendants") filed their chapter 7 bankruptcy petition on September 15, 2010 (the "Petition Date"). The Plaintiff is the duly appointed trustee of the Debtors' chapter 7 bankruptcy case. On the Petition Date, the Debtors filed their bankruptcy schedules ("the "Schedules") and a Statement of Financial

Affairs. The Defendants also filed an Amended Statement of Financial Affairs on September 16, 2010 (collectively the initial Statement of Financial Affairs and the First Amended Statement of Financial Affairs will be referred to as the "Statements of Financial Affairs"). Nothing in the Schedules and/or Statements of Financial Affairs gave notice to or otherwise indicated to the Trustee that the Debtors had pre-petition involvement in real estate investments.

The Defendants 341 meeting was held on October 26, 2010. At the outset of their §341 meeting, the Debtors testified that their schedules were true and accurate in every respect. In addition to their testimony, the Debtors each completed and executed a Trustee's Questionnaire, under penalty of perjury, a copy of which is attached hereto as **Exhibit A** (the "341 Questionnaire"). In completing the 341 Questionnaire, the Defendants indicated, among other things: (a) That there was nothing that the Debtors owned or may have had a claim to an ownership interest in on the Petition Date that was not listed in their bankruptcy schedules; (b) That there was nothing that the Debtors had or may have had an interest in, whether realized or not, on the Petition Date that is not listed in their bankruptcy schedules; and (c) That the Debtors reviewed and signed a complete copy of their petition and schedules prior to the Petition Date. The Debtors adopted their responses contained in the 341 Questionnaire to the same effect as if they had testified orally and under oath.

At the §341 meeting, the Debtors also provided the Trustee with a copy of their 2009 income tax returns, a copy of which is attached hereto as **Exhibit B** and incorporated by reference herein. These tax returns, in addition to records obtained by the Trustee from the New Hanover Register of Deeds, the New Hanover County Tax Department and the North Carolina Secretary of State, disclosed a number of assets and transfers that the Debtors failed to disclose in their Schedules or Statements of Financial Affairs filed prior to the 341 meeting.

## Undisclosed Assets

The Debtors' 2009 tax returns indicate that the Male Debtor received distributions from an IRA account held with Delaware Charter Guarantee & Trust Co. The Debtors did not disclose any ownership interest in any IRA account with Delaware Charter Guarantee & Trust Co. The Defendants also failed to identify any IRA account they formerly had with Delaware Charter Guarantee & Trust Co. that was closed during the two year period prior to the Petition Date in the Schedules or Statements of Financial Affairs. In addition, the Defendants failed to disclose ownership of a ShareBuilder Securities Corporation account the Debtors had through ING Direct (the "Sharebuilder Account").

## Undisclosed Corporate Interests

The Debtors failed to list any current or former ownership interests in several corporate entities in the Schedules or in the Statements of Financial Affairs. These entities include, among others: Personal Fitness Training, Inc.; Hare Properties, Inc.; Cape Fear Ventures, LLC; Bizharp, LLC; Crewz, LLC; and Delia Model Management, Inc. When the Debtors first disclosed these entities in their second amended Statement of Financial Affairs filed on November 15, 2010 (the "Second Amended Statement of Financial Affairs"), they provided a brief description of each entity, some being described as "never came to fruition." However, public records and the Debtor's tax returns disclose otherwise.

The Defendants did not disclose any ownership interest in Hare Properties, Inc., or the transfer of any ownership interest during the two year period prior to the Petition Date, in their Schedules or Statements of Financial Affairs. However, in the Second Amended Statement of Financial Affairs, the Debtors disclosed that the Male Debtor formerly held an interest in Hare Properties, Inc. and that the "Male Debtor has been divested in corporation and corporation was

3

administratively dissolved on 5/20/10." A review of the land records in Onslow County reflect that Hare Properties, Inc. is the current owner of record for real property known as 109 Ruby Yopp Circle. However, the Second Statement of Financial Affairs does not disclose any transfer or what, if anything the Male Debtor received in exchange for his interest in Hare Properties.

The Debtors did not disclose any ownership interest in Bizharp, LLC in the Schedules or Statements of Financial Affair. In their Second Amended Statement of Financial Affairs, the Defendants disclosed an ownership interest in Bizharp, LLC, stating that it was a "Real Estate Holding Company – Never came to fruition," and was administratively dissolved on August 25, 2010. Further, the Debtors testified at their §341 meeting that they did not receive any distribution from Bizharp, LLC. However, the Debtors' 2009 tax returns disclosed that the Debtors received $48,697.00 in income from Bizharp, LLC.

The Defendants also did not disclose an ownership interest in Cape Fear Ventures, LLC, or the transfer of any ownership interest therein, in the Schedules or Statements of Financial Affairs. Then, in the Second Amended Statement of Financial Affairs, the Debtors disclosed formerly owning Cape Fear Ventures, LLC and that in "Late 2008/Early 2009 partners bought out male debtor's interest." Further, when questioned about Cape Fear Ventures, LLC at the §341 meeting, the Male Debtor affirmatively represented that Cape Fear Ventures had no assets. However, a review of the land records in New Hanover County reflects that Cape Fear Ventures, LLC is the owner of record for real property known as 513 N. 8th Street, 608 S. Lake Park, 309 N. 14th Street and 111 S. 15th Street. In addition, Mr. Harper retained an interest in this partnership at the end of 2009, as the tax returns indicate his basis in his membership interest in Cape Fear Ventures, LLC did not change during 2009, as the basis began and ended the year at

4

$252,849.00.  The Second Amended Statement of Financial Affairs did not disclose any transfer of the Male Debtor's interest in Cape Fear Ventures.

### Undisclosed Transfers

The Debtors' statements of financial affairs also failed to disclose several parcels of real property formerly owned by the Debtors that were foreclosed during the year prior to the Petition Date.  A review of the public records maintained by the registers of deeds for Brunswick, New Hanover and Onslow counties revealed several foreclosures that occurred within one year prior to the Petition Date.  These properties include 4918 Wrightsville Ave, Wilmington (sale held June 18, 2010); 1615 Shoreline Place 2-U, Wilmington (sale held April 7, 2010);  008 Lismore Way, Leland (sale held January 28, 2010); and 111 Ruby Yopp Circle (sale held August 24, 2010).

In addition, the Debtors failed to disclose a foreclosure of a parcel of real property located in New Hanover County identified as 310 Ashford Avenue.  This parcel of property was the subject of a foreclosure sale held in April, 2010, with a Trustee's Deed conveying the 310 Ashford Avenue property was recorded on May 18, 2010. Then, this property was transferred to Mr. Harper by quitclaim deed that was recorded at the New Hanover County Register of Deeds on September 2, 2010, a copy of which is attached hereto as **Exhibit C.**  The Debtors did not disclose the foreclosure of or subsequent ownership of the 310 Ashford Avenue property in their Schedules of Statements of Financial Affairs.

Beyond the omitted foreclosures, the Debtors' 2009 tax returns also disclosed that the Defendants' sold the stock of multiple corporations during the year prior to the Petition Date. These sales were through the Sharebuilder Account.  Neither the individual sales of stock nor the Sharebuilder Account were listed in the Schedules nor in any of their statements of financial

5

affairs until the Third and Fourth Amended Statement of Financial Affairs filed on April 12 and April 13, 2011, respectively. Finally, the Debtors did not disclose anywhere in their statement of financial affairs the receipt of $14,909.92 from Cumulus Broadcasting, LLC, which was received as income at some point during in 2009.

## Post-341 Meeting Conduct

The Debtors filed a Second Amended Statement of Financial Affairs on November 15, 2010. However, the Second Amended Statement of Financial Affairs only amended the Defendants' response to SOFA Question Number 18 to include a number of business entities the Debtors owned or had an ownership interest in. On December 19, 2010, the Debtors filed a Motion to Convert their case from one under chapter 7 to one under chapter 13. The Plaintiff timely responded and objected to the Motion to Convert. On January 27, 2010, the Court entered an Order denying the Motion to Convert on the grounds that the Defendants' failure to disclose their interests in the various corporations and the pre-petition foreclosure proceedings were "so misleading as to give rise to an inference of bad faith. . . ." (DE 76, January 27, 2011). The Defendants filed a Third Amended Statement of Financial Affairs on April 12, 2011 and Fourth Amended Statement of Financial Affairs on April 13, 2011.

## STATEMENT OF THE CASE

On January 24, 2011, the Plaintiff filed the instant action seeking a determination that the Debtors were not entitled to a discharge pursuant to 11 USC §§727(a)(2); (a)(4)(A) and (5). On April 13, 2001, 2010, the Defendants timely responded to the Plaintiff's Complaint, asserting that they were entitled to their discharge.

The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6

This matter is a core proceeding under 28 USC §157(b)(2)(J) as it objects to the Debtors' discharge.

Based on the facts and circumstances of this case, including matters of record, this case is ripe for determination at summary judgment.

## SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)). See also FED. R. BANKR. P. 7046 (incorporating Fed. R. Civ. P. 56 in adversary proceedings); Eborn v. Sawyer (In re Sawyer), 192 B.R. 671, 673 (Bankr. E.D.N.C. 1995) (granting plaintiff's motion for summary judgment and applying doctrine of res judicata to preclude defendant from re-litigating issues resolved by trial court's order). In deciding whether to grant a motion for summary judgment, the court resolves all conflicts by "viewing all facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party." In re Sawyer, 192 B.R. at 673 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). A party opposing a motion for summary judgment may not rely upon the mere allegations of its pleadings, but must instead set forth, by affidavit or otherwise, specific facts showing that a genuine issue exists for trial. FED. R. BANKR. P. 7056 (incorporating FED. R. CIV. P. 56(e) in adversary proceedings). Thus, summary judgment should be granted when "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

7

## ARGUMENT

"The successful administration of the Bankruptcy Code depends upon the honest disclosure by the debtor of his financial affairs." Butler v. Ingle (In re Ingle), 70 B.R. 979, 984 (Bankr. E.D.N.C. 1987). Debtors are provided a "fresh start" through 11 U.S.C. § 727, which provides for a general discharge of their debts, but the discharge only available to totally open and honest debtors who provide a complete disclosure of their financial affairs. See, Union Bank of the Middle East, Ltd. v. Farouki (In re Farouki), 133 B.R. 769 (Bankr. E.D.Va. 1991) aff'd sub nom. Farouki v. Emirates Bank Int'l, 14 F.3d 244 (4th Cir. 1994). Section 727 contains provisions that bar a general discharge "to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." Farouki, 133 B.R. at 776 (citing In re Tully, 818 F.2d 106, 110 (1st Cir. 1987)). The Defendants' conduct in this case falls short of the standards for full and complete disclosure. The Defendants' discharge should be denied.

The Defendants signed the Schedules and Statements of Financial Affairs under penalty of perjury, indicating that the information contained therein was true and accurate. The Debtors testified at the outset of their §341 meeting that their schedules were true and accurate in every respect. The Defendants completed the 341 Questionnaire under oath and penalty of perjury that included a statement that there was nothing that the Debtors had or may have had an interest in, whether realized or not, on the Petition Date that is not listed in their bankruptcy schedules. However, when the Defendants filed their bankruptcy petition, schedules and statement of financial affairs, the Defendants' failed to accurately and fully disclosure all required information. The Defendants continued to fail to fully disclose all requested information even after twice amending their statement of financial affairs. The Defendants omitted assets,

corporate interests and prior transfers of both real and personal property. In doing so, the Defendants failed to provide the Trustee and their creditors with an accurate picture of their financial circumstances.

The Defendants, in their Answer, make the self-serving statement the omissions were inadvertent, not intentional or fraudulent as alleged by the Trustee. The Defendants have made multiple attempts to cure the deficiencies in their schedules and statement of financial affairs since the 341 meeting, the most complete amendments not being filed until nearly 3 months after the Trustee filed his Complaint in this action (and on the same day the Defendants filed their Answer). Unfortunately for the Defendants, these subsequent amendments do not cure the Defendants prior false statements and/or omissions that should have been made by the Debtors on the Petition Date. The Defendants should not to be rewarded with a discharge when the only meaningful amendments to the Schedules and Statements of Financial Affairs were made only after the Trustee discovered the errors and omissions and only after the Trustee filed a complaint objecting to the Defendants discharge.

I.      **The Defendants' discharge should be denied because they have knowingly and fraudulently made a false oath or account in or in connection with their bankruptcy.**

The Bankruptcy Code provides that a debtor seeking chapter 7 relief shall be granted a discharge of his debts unless "the debtor knowingly and fraudulently, or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). In order to be denied a discharge under this provision, "the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud." Angell v. Pittman, (In re Pittman), AP 07-00025-8-JRL (Bankr. E.D.N.C. January 29, 2008) (citing Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007)

(citing Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987))). When analyzing §727(a)(4), "'reckless indifference to the truth'" is the functional equivalent of fraud. In re Tully, 818 F.2d 106, 112 (1st Cir. 1987) (quoting In re Diorio, 407 F.2d 1330, 1331 (2d Cir. 1969) (per curiam) ("Statements called for in the schedules . . . must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud."). "A pattern of omissions and inaccuracies on a debtor's sworn schedules indicates a reckless disregard for the truth which is evidence of fraudulent intent." Northen v. Mack (In re Mack), 2009 Bankr. LEXIS 2937, 12 (Bankr. M.D.N.C. September 18, 2009)(citing In re Slattery, 333 B.R. 340, 344 (Bankr. Md. 2005) (omissions of real property on schedules evidences at minimum a reckless disregard for the truth equivalent to fraud); In re Hooper, 274 B.R. 210, 219 (Bankr. D. S.C. 2001) (finding that numerous inaccuracies on schedules and statement of financial affairs displayed a reckless disregard for the truth); In re Hatton, 204 B.R. 477, 484 (Bankr. E.D. Va. 1997) (holding that the failure to list on petition various insider transactions and expenditures constituted a pattern of concealment and nondisclosure from which fraudulent intent could be inferred). Finally, a matter is "material" for purposes of §727(a)(4)(A) if the subject matter "bears a relationship to the bankrupt's business transactions or estate or concerns the discovery of assets, business dealings or the existence and disposition of his property." Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 251 (4th Cir. 1987)(citing In re Chalik, 748 F.2d 626, 618(11th Cir. 1984)). Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules "serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true." Cadle Co. v. Pratt (In re Pratt), 411 F.3d 561, 566 (5th Cir. Tex. 2005).

There is no dispute that the Schedules and Statements of Financial Affairs were not true and accurate when they were filed. The Defendants reiterated their position in their 341 meeting testimony and through execution of the 341 Questionnaire. The record is clear, however, that the Defendants failed to schedule several important items of information, including but not limited to, the existence of and transfers from an IRA account, the Debtors interests in various corporations and limited liability companies, the Male Debtor's transfer of membership interests in several of the undisclosed limited liability companies and multiple completed and pending foreclosures of real property, one of which was commenced les than one month prior to the Petition Date. The Debtors had more than ample opportunity to properly disclose all of this information, yet they failed to do so.

Beyond the fact that much of the information not initially disclosed by the Debtors is readily available from a search of public records, pertinent information was within the Debtors own records that they could have reviewed to ensure they properly disclosed the full extent of their financial circumstances, yet they recklessly failed to do so. Most detrimental to the Defendants is the fact that much of the information about the Debtors' corporate interests and transfers contained within the Debtors' 2009 tax return. While the Debtors referred to this document when preparing their initial schedules for certain items, such as in response Question 1 on the Statement of Financial Affairs where the Female Debtor discloses $28,495 in income received from the Delia Modeling & Talent Agency and that the source of this information was from the tax return, they failed to disclose several additional required items of information contained in the 2009 tax return. The failure to include any additional information that could be gleaned from a cursory review of the 2009 tax returns clearly shows a deliberate effort by the Debtors to pick and choose the information that they were going to disclose to the Trustee.

The Debtors' reckless disregard for the truth is clear. The Debtors' failures to provide complete and accurate schedules and statements of financial affairs, when all of the information that they would need to refer to in order to obtain all such information was easily accessible, clearly shows a reckless disregard for the truth, with the intent to defraud the Trustee. The Defendants discharge should be denied under §727(a)(4)(A).

II.     **The Defendants' explanations and subsequent remedial actions do not cure their admitted failure to fully and accurately disclose assets and transfers.**

It was the Debtor's obligation to fully disclose all required information, as "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." In re Tully, 818 F.2d 106, 110 (1st Cir. 1987). Further, despite the efforts of the Defendants to cure their transgressions through multiple amendments, most of which were made well after Trustee filed his objection to the Defendant's discharge, the "voluntary disclosure through testimony or amendment to the schedules or statement of financial affairs does not expunge the falsity of the prior oath." Northen v. Mack (In re Mack), 2009 Bankr. LEXIS 2937, 10 (Bankr. M.D.N.C. September 18, 2009)(citing In re Fink, 351 BR 511, 526-527 (Bankr. N.D. Ill. 2006)). There is no factual dispute that many of the items identified by the Trustee in the Complaint were not disclosed by the Defendants when their filed their Schedules and Statements of Financial Affairs. Rather, the Defendants attempt to explain away the errors and omissions as inadvertent errors. This excuse is not sufficient. Courts have held amendments to defective schedules to be insufficient to overcome the failure of less than truthful, full disclosure. See, Butler v. Ingle (In re Ingle), *supra,* (denying a debtor's discharge where a subsequent amendment to included previously undisclosed property does not excuse the initial omission); In re Jongsma, 402 B.R. 858, 876 (Bankr. N.D. Ind. 2009)(the failure to disclose assets in a bankruptcy case on the basis that an exemption caused those assets to be non-

administrable is no excuse whatsoever for not disclosing the assets and asserting an appropriate exemption with respect to the undisclosed assets).

The Defendants incomplete disclosures, signed under oath and under penalty of perjury, cannot be condoned. The Defendants' failures are further compounded by the fact that most of the information that was omitted was within the Defendants' grasp. Instead, the Trustee was required to hunt for the truth by going behind the Defendants, looking through the public record or the Defendants own tax returns for information necessary to analyze the Defendant's bankruptcy. The subsequent amendments do not cure the Defendants' failure to meet their obligation of full, complete disclosure. This is an obligation that they failed to meet. The penalty should be the denial of the Defendants' discharge.

## CONCLUSION

In order to obtain a discharge from liability for their debt and for a fresh start, the Defendants have an obligation of full disclosure and full cooperation. Their attempt to meet these obligations failed, as the Defendants did not properly disclose assets of the estate, corporate interests or multiple pre-petition transfers of real property and corporate interests. These acts cannot be sanctioned by the Court. The Defendants discharge should be denied pursuant to §727(a)(4)(A).

This the 11th day of July, 2011.

HOWARD STALLINGS FROM & HUTSON, P.A.

By:    /s/ Philip W. Paine
       Philip W. Paine
       NC State Bar No. 31710
       P.O. Box 12347
       Raleigh, NC 27605
       Telephone: 919-821-7700
       Facsimile: 919-821-7703

13

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| In Re:<br><br>CHRISTOPHER WELLS HARPER,<br>JANICE DANIELLE HARPER,<br><br>Debtors. | Case No.<br><br>10-07510-8-JRL<br><br>Chapter 7 |
| James B. Angell, Chapter 7 Trustee for<br>Christopher Wells Harper and Janice Danielle<br>Harper,<br><br>Plaintiff,<br><br>v<br><br>Christopher Wells Harper and Janice Danielle<br>Harper,<br><br>Defendants. | Adversary Proceeding<br>No.: 11-0015-8-JRL |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies under penalty of perjury that she is over eighteen (18) years of age and the **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** was this day served upon the below named persons, parties and/or counsel by fax and service through the Court's CM/ECF system to counsel at the address shown below:

James S. Price
James S. Price & Associates, P.A.
5725 Oleander Dr., C-3
P.O. Box 3006
Wilmington, NC 28406-0038
Attorneys for the Defendants

Dated: July 11, 2011

/s/ Carly S. Coe
Carly S. Coe, Paralegal
P.O. Box 12347
Raleigh, NC 27605
Telephone: 919-821-7700
Facsimile: 919-821-7703

14